is the court. My name is Stuart Flinsky. I'm representing the petitioners in this action and Mrs. Greenberger, who briefed us, is sitting at counsel's table. In reviewing the record and also the State Bar's record regarding Mr. Mason, I believe what we have here is a case of a manifest injustice, that we had Mr. Mason, who had a pattern and practice of his 10-year plan under Section 240A, which doesn't help anybody and usually is a railroad straight to an order of removal. Now, the thing that makes it even worse in this case is the Howarguis, on the face of the facts, had an avenue of relief. They shouldn't have applied for asylum. They should have filed combined I-130 immigrant visa petition along with adjustment of status under Section 245I. This should have been done administratively before they were even able to do it. So they had their hearing before the I.J. and they didn't appeal the adverse decision and their motion to reopen was filed, which is what we have. Correct, Your Honor. Correct. Now, there are separate issues with respect to each of the two petitioners that have been raised in the petitions, in the petition. There was no --- Well, you can look at them a little bit differently. With Mrs. -- with his wife, the I.J. seemed to have cut short her ability to make a showing for cancellation of removal, if I'm not mistaken. That is correct, Your Honor. Basically, just shut down the proceeding with respect to her. When you look at the record, that's, you know, questionable whether or not the I.J. should have done that because you look at the two petitioners separately. And with respect to him, there's the argument, as I understand it, is that the motion to because he has an avenue to adjust his status through her, his wife's priority date. Not precisely, Your Honor. Not precisely? Well, it's complicated, so explain to me why I didn't say it accurately. What we have here is a situation of two principal aliens. It's his classification and her priority date. And they have to go together. They can't do following to join. It has to be a company if they do it together. In your order in immigration, for the order of consideration is, one, priority date, two, classification, and three, country you're charged to. Now, we don't have any questions of cross-chargeability here under Section 202D of the Act, or probably 202B, simply because everybody's from Mexico. So that is not an issue. What the issue is, though, is classification and priority date. And that's under Section 203 of the Act. And is it he gets the priority date based upon her, based from her? He gives her the classification. She gives him the priority date. Priority date. Now, she gets, he gets, she gives him the priority date through her father. Through her father. Okay, now let me ask you this. Now, when I looked at this, the regulation that you appear to rely on is 8 CFR 4253. Is that right? In part, yes, Your Honor. There's also another CFR in, 8 CFR, but. Well, let's just deal with this one for a minute, and you can explain to me why, if I'm misunderstanding the regulation. 4253C, it talks about derivative priority date, right? Correct, Your Honor. Okay, and then what concerns me, a child, is this provision in that regulation? A child born of a marriage which existed at the time of a principal alien's admission to the United States is considered to have been acquired prior to the principal alien's admission. Now, when I look at the documents in this file, in this record, it looks as though at the time her father was admitted, he wasn't married. Okay. And she was born much later in time. Okay. So, what do we do with that? You know, Mr. Martino's article in Interpreter Releases lays it out. This regulation is a current regulation. What we're talking about, what was the law before January 1st of 1977, and under the Savings Clause of the 76th Legislation, which says, if a child is born of a marriage, because before 77, if you were from the Western Hemisphere, there was one big non-preference classification. You weren't divided into, you know, at the time, one through six preferences. Right. It was just flat out, here's the pool, first come, first serve. And that system was abolished as of January 1, 77. But the Savings Clause says, if you had a priority date, you were born of a priority date, you could use it for any later classification under Section 203A of the Immigration Nationality Act. Now, what today is now it's Section 203D. Back in 77 was Section 203A8. So, when her husband had this visa petition filed on her behalf, she qualified for the same classification. And if we were still operating under the 77 law, the 76 law, it would have been under 203A8. But what I don't understand is that regardless, doesn't there have to be a cross-chargeability for Western States that existed prior to 77? No. You talk about the fact that you can utilize it, but you still have to get back to the core issue as to whether or not there's cross-chargeability at any time. Your Honor, cross-chargeability in this case is irrelevant because everybody is from Mexico. Well, that only deals with, you know, the fact that they're from Mexico. But we're talking about cross-chargeability for priority dates. That's not the same thing, is it? Your Honor, technically speaking, it is not chargeability at all. Right. The only time the Act uses the term chargeability is in Section 202B, and that has to do with country. And plus, I would also ---- My concern, I mean, I think I understood that from your argument in your briefs. But my concern, though, was that I read the regulation. It seemed to disqualify him getting the priority date. But your argument is that you have to go back prior to what the law was prior to January 21, 1997. Correct, Your Honor. And I'm not sure how that all works yet. I haven't quite figured it out. Well, Your Honor, I would also like to point out that that issue was never ruled upon by the Board. It was raised by the Howergees in their motion to reopen. It never got adjudicated. They just said visa petition hasn't been approved. It's been filed and actually is still pending. But, you know, the Board in the Velarde case, which is cited. You know, there's another requirement, as I understand it, for adjustment of status, that there has to be an immediately available visa petition. Or a number, whatever. I forget what it's called. Well, if the visa petition, if and when it is approved, our submission is that it will have a priority date back in, I think, even in the 60s. And that is way before any of the cutoff dates for any country in the world. So it would be immediately available. And there's also regulation that says your petition is considered filed as of the priority date. So that's what we would have. And that's where the Savings Clause comes in. So what are you asking us to do, bottom line? Bottom line, we're asking that it be remanded to the Board. For what purpose? To reopen, to take the adjustment of status upon approval of the visa petition, and then they can adjudicate whether Western Hemisphere priority date applies or not. Now, what we have here is just, we had, like I say, an attorney who just had his 10-year plan. I would submit we had a... We don't have any claim here of ineffective assistance of counsel in this petition, as I understand it. That is correct, Your Honor. And it comes, and it was for... This is just something you're just sort of throwing to us now that Mr., what was his name, Mason? Timothy Mason, who was... It was probably ineffective at the time he handled this whole thing. Your Honor, we provided the judgment of the State Bar Court. No, but that, I mean, I understand that. But the problem is there was no separate claim in this motion to reopen that the basis for the motion to reopen was that there was ineffective assistance of counsel at the immigration hearing, at the removal hearing. That argument isn't in the motion to reopen, if I am not mistaken. No, it's there, Your Honor. It said it was ineffective, and it was obvious because he didn't bring it up, and neither did the judge. Can you just try to clarify for me, and just my apologies, I just may not understand this sufficiently, but you can explain to me. The regulation concerning priority dates, as I read it, is solid to whether principal alien's child spouse, that is, Mr. Jairighi, may benefit from the priority date of the principal alien. I'm referencing 4253 of CFR. But there is this Department of State's foreign affairs manual that says there is no cross-chargeability for Western Hemisphere priority dates. Can you explain to me what that's all about? Well, two explanations. One, we just simply submit it's wrong. That's explanation number one. Okay, explanation number two, which I already gave, it refers to word cross-chargeability. Cross-chargeability is a term of art that deals with section 202B. Everybody here is from Mexico. We're not talking about cross-chargeability. But, you know, the matter of Asher case, which you cite, talks about that. And I agree, but it concerns cross-chargeability in the context of determining an alien's foreign state for quota purposes, not priority date. You don't see any difference between these two things? For the Asher case, we submit that the principle of two, you know, the idea of having two principal aliens, where it comes together and it brings, you know, you can combine the two of a husband and wife. That's what Asher stands for. The other thing is that before 77, there was no quota system for the Western Hemisphere. Just as an example, this is a friend of mine who was born in China. Her sons were born in Canada. When she became eligible for a quota visa, her Canadian sons, under cross-chargeability, became Chinese. And since after 77, the quota system does apply to the Western Hemisphere. That's gone, and I think that's what they're referring to. I finally, I actually found it somewhat confusing, but it does refer only to cross-chargeability. Well, I feel better knowing now that you also found it confusing. Everybody finds it confusing. I must admit, I'm just looking at your blue brief, and I did read this, and I didn't see a heading here that said, ineffective assistance of counsel at the removal hearing warrants remand. Well, it was on the, we were saying, you know, that it was... You say that she, the wife, received, had her due process rights reviled because of the way the IJ conducted the hearing, which is different. I would say that it's also part and parcel. Okay. All right. Thank you. We've gone over your time, so thank you very much. We need to hear from the government. May it please the Court, Brooke Maurer for Respondent Attorney General. Help us understand cross-chargeability and priority dates and the regulations. Well, as it pertains to the Western priority date, it's the government's position that the portion of there that precludes an individual whose parents were not married at the date that they applied for admission and then did gainfully get admission, which was in 1956, I do believe, is when he applied, and I think he later got in there prior to that. They were not married. He listed himself... So you look right to this, like I did, you look right to this regulation, and it doesn't appear as though they meet the qualifications of the regulation. No, I think, as you see... Now, counsel just went through an argument that said, well, you shouldn't really look at that regulation because you should go back prior to the effective date of this regulation... And that's... And apply the law that existed at that time, which didn't have this requirement. No, and the government... What's wrong with that? Well, the regulations, well, first and foremost, the initial argument I believe that they made in their reply brief is that the admission that we're supposed to look at is the admission after he went back and he'd already become a permanent resident in the United States, went back and married his wife, and then re-quote-unquote-admitted into the United States. And they're trying to use that admission date as the date, you know, that she was actually married and then therefore became eligible. This is a relatively new argument that he's bringing forth as far as the applicability of the previous... Well, what do you say about that? Um, as far as the government stands, the government stands that the applications as of the date that he applied for it would be how it stands. And how it stands now is that because he was not married at the time, she is ineligible for the priority date, which her father established. Simple as that. Yes. Tell me about Mrs. Girodny. Um... The poor woman didn't have a chance to speak about her son, who's an American citizen. That seems like a fundamental deprivation of giving her an individual opportunity to exercise her due process rights and to testify. Well, as this Court and as the Board has noted, that it's not a requirement that a petitioner actually testify at a hearing. The attorney that she originally had representing her, Mr. Mason, I believe, he initially was going to call both of them as witnesses. The son, which was four years old, was admitted to be a Spanish-speaking individual. If you look at the application she made for cancellation, she stated that her children would be deprived of opportunity, and as this Court has previously held, that educational deprivation is not necessarily going to constitute extreme and unusual hardship. But the Court didn't hear from her own lips as to whether she believed that for whatever reason she might have believed that this would constitute cruel and inhuman treatment. That's exactly what the hearing is supposed to flush out, isn't it? In fairness to the mother, don't you think she should have been given an opportunity? And if it's a close call, should we not opt in favor of her right to testify? Well, she could have had and she should have had potentially the right to testify. However, she also has to demonstrate that such deprivation caused her prejudice. Do you think that prejudice is a requirement when somebody has denied their right to testify at their own immigration hearing? Well, as it was stated on the record, that her attorney decided not to pull forward and her husband had already testified as to her son, which was the same, the shared child that they'd be using for the hardship. You see nothing wrong with this at all? I mean, looking at it from an objective sense of fairness and your office is charged with applying the law fairly and reasonably and you have a higher duty and a higher calling to do justice? What do you think about that? I don't think anybody would disagree that many of the things are anything but harsh and how we look at it. This wasn't a regulation. This was the way the IJ conducted the hearing. And as she could have had an opportunity to testify, her attorney decided not to put forth her testimony and he could have attempted to do so, but he didn't. He failed. Well, as an aside, as counsel tried to point out, we now know that Mr. Mason was less than a stellar advocate. Which is apparently so. However, in this case, I mean, the court also has to look at whether she actually was prejudiced by her failure to testify. And she's never put forth any type of information that she was going to put any type of... I'm not so sure the law supports that. You know, that's not my sense of it. But would it not be deemed to be prejudicial not to give her the opportunity to speak about her son, an American citizen, a young boy, and what it means to him? I mean, do we really, even if we were to deal with prejudice, would that not be sufficient? Well, if she failed to testify and the attorney did not put forth such I mean, I guess then she would technically have some type of prejudice that she didn't go up and testify. However, I mean, she's failed as far as we've said in her brief, she's failed to put forth any type of prejudice or any type of evidence that she would have had further harm. You might understand why we're a little troubled with this situation. Of course. Let me ask you, do you agree with Mr. Polinsky's remarks about chargeability and all of that? No. No. Why not? The cross designation, as the regulation said, quoting the same manual, basically said that the Western priority dates are not transferable to an applicant who is applying and trying to utilize somebody else's priority date. And so, therefore, there would be no cross designation availability to him, based upon her father's priority date. She couldn't transfer that to her father. And where does that come from? What's the basis for that statement you just made? You'll have to pardon me. That's okay. It's very complicated. I know. And I didn't brief this, so it's relatively I understand. And I believe that's the the manual stated at 42.5 at note 4.3. And they said there's no cross chargeability for Western hemisphere priority states. Thus, if a derivative spouse is entitled to a Western hemisphere priority date, the alien cannot transfer entitlement. Slow down. If a derivative spouse is entitled to a Western hemisphere priority date, the alien cannot transfer entitlement to the principal applicant, which would be the case here, where the principal applicant would be her husband. But you say there's no entitlement here at all, because at the time, her father was admitted and was not married at the time. So that would be kind of if we changed it so she did actually, in fact, have entitlement to said priority date. Now, what was the manual again? Was that cited in your brief? Yes, that was 9 I'll get the correct cite for you. Is that cited in the government's brief? That's on page 29. Page 29 of the red brief? Yes, that is correct. That's the Department of State's foreign affairs manual you referred to. Oh, I see. Okay. Is there no further questions from the government? Is that just a guideline or is that binding or what? How does that work? It's understandable that it is used technically as a guideline, and in this case I mean, it's clear on its face as to whether the applicability applies here, and it does not. This is the 9 FAM 42.53 note 4.3 you're talking about? That is correct. Okay. Thank you so much. I appreciate your argument. Mr. Pelosi, you have a minute. Thank you, Your Honor. Your Honor, regarding your question about the foreign affairs manual, it is just a guideline. It does not have the Well, it's informative, isn't it? What? It's informative, isn't it? No. Of course. All I'm saying, it's not a binding regulation. All right. And that particular note simply talks about again, it's in caption, cross-chargeability. And part of our argument is that I have this strange thing. I look to the Act first, and not the descriptions of the Act. I also look to binding regulations. And we're looking at the Savings Clause and the provisions of the Act as it existed before 77, and that's what we have. Any further questions, Your Honor? I have none. Thank you so much, Mr. Polensky. Thank you. We appreciate your arguments. The matter will be submitted. Thank you. Thank you. Thank you. Our next case for argument is Bob Dez, Bernal v. Kiesler.
judges: Farris, Paez, Block